# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

ROBERT D. SAMUELS, Appellee, *vs.* THE NORTHRUP NATIONAL BANK OF IOLA, KANSAS, *et al.* Appellants.

*Opinion filed April 23, 1908.*

1. EVIDENCE—*where a conspiracy is charged, evidence admissible against one defendant is admissible against all.* Where a bill charges a conspiracy among the defendants to obtain money from complainant, and the evidence sufficiently establishes such charge, admissions made by one defendant concerning the transaction are competent against the others.

2. CONSPIRACY—*when an order to pay money may be canceled.* An order to a bank to pay the proceeds of a certain certificate of deposit to various persons is properly canceled by a court of equity, where there was no consideration for the order, which was obtained by a conspiracy among the persons in favor of whom the order was made.

3. CONTRACTS—*when agreement to pay money is without consideration.* An agent who makes a contract in his own name for the sale of land of an undisclosed principal has no power to destroy the contract without the principal's consent, and his act in doing so does not constitute consideration for an agreement by the proposed purchaser to pay the agent money to release the purchaser from the contract.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. SOLON PHILBRICK, Judge, presiding.

EDWARD J. SWEENEY, for appellants.

INGHAM & INGHAM, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee by his bill sought the cancellation of a written order addressed to the appellant Northrup National Bank, directing it to collect a certain certificate of deposit for $2000 and out of the proceeds to pay certain sums to others of appellants.

In May, 1905, appellee and his wife, Sarah J. Samuels, were living apart, having about six months before entered into a written agreement for a separation and a disposition of their property, the custody of the two children, a boy and a girl, each of the age of sixteen or eighteen years, being given to the wife. Through the appellant DuBois, who was engaged in securing purchasers for Kansas land, an understanding was arrived at between the appellee and his wife that the appellee would go to Kansas and buy a farm if his wife and children would go there and live with him. Mrs. Samuels would not go with her husband, as his wife, to look at the land, and so Mrs. DuBois went with the party as her companion. E. E. Jeter, who was interested with DuBois in the sale of the land, paid for Mrs. Samuels' ticket. The party, consisting of Mr. and Mrs. Samuels, Mr. and Mrs. DuBois, Jeter, and a man named Miller, arrived at Iola, Kansas, on May 17, 1905, and was met at the railroad station by the appellant Fuller, who was in the real estate business in Iola and who entertained the party at his house while they were in Iola. On that day Fuller showed appellee and his wife several farms, and on the next day a written contract was entered into between Fuller and appellee in regard to the purchase of a certain farm of one hundred and twenty acres. Appellee is unable to give the terms of this contract, which was subsequently destroyed, but claims

that by it he was given until the next day to determine whether or not he would buy the land. Fuller, DuBois and Mrs. Samuels deny this, and say that it was an absolute contract to purchase the land for $6000,—$2000 cash and the remainder by January 1, 1906. Appellee endorsed and delivered to Fuller a certificate of deposit of the Commercial National Bank of Moweaqua, Illinois, for $2000, and a written contract was entered into between appellee and his wife whereby she agreed to sell eight lots in Clinton, Illinois, which had been conveyed to her in pursuance of the agreement of separation, and apply the proceeds on the purchase of the Kansas farm. She also agreed that the agreement of separation should be destroyed and that she would thereafter live with her husband as his wife. The next morning appellee, Samuels, in accordance, as he claims, with the option contained in the contract, declined to make the purchase and demanded of Fuller the return of the certificate of deposit and the cancellation of the contract. These demands Fuller refused, but finally agreed, so far as he was concerned, to release appellee for $500, to which appellee agreed. Thereupon DuBois demanded payment of his expenses, and appellee agreed to pay him $100 and to pay his wife one-half the remainder of the certificate, $700. A writing directing the Northrup National Bank to collect the draft and pay these amounts to the respective parties and the remainder to the appellee was then prepared and signed by appellee, and the contract for the sale of the land and the one between appellee and his wife were then burned.

The bill alleges that Mrs. Samuels never intended to keep her promise to move to Kansas and live with appellee; that appellee was not indebted in any way to either Fuller or DuBois; that he signed the order to the bank without consideration, under duress, and as the result of a conspiracy between Fuller, DuBois and Mrs. Samuels; that he notified the Commercial Bank of Moweaqua not to pay the certificate of deposit, and it has not been paid, and the prayer was

for the cancellation of the order and the delivery of the certificate of deposit to the appellee. The circuit court decreed the relief prayed for, and this appeal is from the judgment of the Appellate Court affirming that decree.

The inducement for Samuels to buy a farm in Kansas was the hope of the united family going there to live with him. Mrs. Samuels had told him that the children would come and that she would not come without them, yet she testified that Clyde, the boy, did not say he would go but said he would rather wait and hear what she had to say before he agreed to go. Appellee testified that she told him the night after the contract was signed that there was nothing sure about Clyde coming out there, and at that time he made up his mind not to take the land.

W. E. Carrier, a witness on behalf of appellee, testified that he had a conversation with Mrs. Samuels shortly before she went to Kansas, in which she told him she was going there; that her husband was going to buy a farm, and she understood the laws of Kansas gave the wife a half interest in the real estate and she was going for that reason. She did not intend to move out there but only wanted him to buy the land. She wanted to get the upper hand of him, if possible, and get a better hold on his capital, but she had no intention of moving there.

George L. Samuels, a cousin of appellee, testified that he had a conversation with Mrs. Samuels after she returned from Kansas, in which she said they had been out and bought a farm but she did not know whether she would get anything out of it or not, as it seemed like her husband was dissatisfied and backed out; that she did not go with him but with Mr. and Mrs. DuBois, and he went along; that she did not intend to have anything to do with him, but that she went along to buy the farm so she could get a claim on him and some of the money that she thought rightfully belonged to her; that she claimed $700, and the attorneys at Iola claimed $500 and Mr. DuBois $100.

Mrs. Samuels denies both of these conversations. It is apparent, however, that Samuels went to Kansas under the impression that the purpose was to get a home in which he could reside with his wife and children, and it is also apparent that Mrs. Samuels was willing that he should remain under this impression until the land was bought, knowing, as she did all of the time, that their son did not want to go and that she did not intend to go unless he did. She waited until after the contract was signed before she said anything to her husband about the boy not having agreed to go, and it is evident that this was the reason which induced the husband to refuse to purchase the land. There is no claim that Fuller owned the land contracted for and no evidence that he had authority from the owner to sell it. The contract of sale was in the name of Fuller and did not disclose the name of the owner. The most favorable view which can be taken of the transaction is that Fuller was the agent for the undisclosed principal and had the property for sale. He was not the agent of appellee and was not entitled to any commission from appellee for making the sale. DuBois did not represent appellee in the transaction and therefore had no claim upon him. Mrs. Samuels, without any real intention of keeping her promise, had deceived the appellee by her apparent acquiescence in the plan of re-uniting the family, for the purpose of benefiting by the proposed purchase. There was no consideration for the payment to the persons named in the order of any part of the proceeds of the certificate of deposit. If the land belonged to an undisclosed principal of Fuller's, the latter would have no right to destroy the contract without the consent of his principal. The order upon the bank was without consideration and was the result of a conspiracy among the appellants to obtain from Samuels his money, and the chancellor committed no error in so holding.

It is also insisted that the evidence of W. E. Carrier and George L. Samuels with reference to conversations

which they had with Mrs. Samuels was incompetent against the other appellants. The bill charges a conspiracy between appellants to deprive appellee of his money. The evidence sufficiently established this charge, and the testimony was competent not only against Mrs. Samuels but against the other defendants.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*