(No. 15453.—Reversed and remanded.)

W. A. THOMSON, Defendant in Error, *vs.* ALEXANDER W. THOMSON *et al.* Plaintiffs in Error.

*Opinion filed February 17, 1925.*

1. PRINCIPAL AND AGENT—*agent cannot rescind contract without consent of principal—sales.* An agent who makes a contract in his own name for an undisclosed principal has no power to destroy the contract without the principal's consent, and a broker making a contract for the sale of property for another has no right to rescind the contract without the knowledge or consent of his principal unless the commercial usage was such at the place where the sale was made.

2. CONTRACTS—*a contract must be construed according to its plain provisions.* If the words of a contract are unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used, and a party cannot impose a condition not provided for in the contract itself.

3. SAME—*party to contract cannot be relieved of its obligations nor deprived of its benefits.* One who contracts cannot be relieved from the obligation of his contract which binds him to perform his agreement, nor can he, without his consent, be deprived of the benefit of his lawful contract and the rights which it confers upon him, and in every case the question is what the contract was and what obligation it created.

4. BROKERS—*when contract for purchase of grain is subject to rules of Board of Trade.* Where a brokerage firm, in executing an order to purchase corn for July delivery, employs certain members of the Chicago Board of Trade to contract, as agents for the buyer, for the purchase of the corn, and the order is confirmed and reported to the buyer to be subject to the rules of the Board of Trade, the buyer, not having repudiated the order, is bound, in a suit for breach of the contract, by a war emergency rule of the board fixing the price for settling all contracts for July delivery of corn.

5. SAME—*members of Board of Trade are bound by its rules.* Members of the Chicago Board of Trade are bound by its lawful rules, regulations and by-laws, as they bind themselves in writing to obedience thereto as a condition precedent to membership.

6. SAME—*when resolution of Board of Trade is admissible to determine obligations of a contract.* A resolution of the Chicago Board of Trade fixing a price for the settlement of all contracts for the purchase of corn to be delivered during a crisis in the

market because of war conditions is admissible to determine the obligations of a contract for the purchase of a certain amount of corn for such delivery, where the contract made for the buyer by members of the Board of Trade was reported to him to be subject to the rules of the board and was not repudiated by him.

DUNN, STONE and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

HENRY S. ROBBINS, and WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, and WALTER H. JACOBS, of counsel,) for plaintiffs in error.

KEITH L. BULLITT, and KING, BROWER & HURLBUT, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Defendant in error, W. A. Thomson, (hereinafter called plaintiff,) brought suit in the municipal court of Chicago against plaintiffs in error, partners under the firm name and style of Thomson & McKinnon, (hereinafter called defendants,) to recover damages for alleged breaches of contracts of agency with reference to the purchase and delivery of grain. The court directed a verdict for defendants, and plaintiff appealed to this court on the ground that his constitutional right had been violated by the impairment of the obligation of the contracts. This court finding that no constitutional question was involved, transferred the case to the Appellate Court for the First District. The Appellate Court being of the opinion that the municipal court erred in directing a verdict for defendants, reversed the judgment and remanded the cause to the municipal court for another trial. The cause was reinstated in the municipal court, and upon being re-tried the court instructed the jury to return a verdict for plaintiff for $15,588.50, and judgment was

entered accordingly. Defendants appealed to the Appellate Court, where the judgment was affirmed. This court allowed a petition for a writ of *certiorari* to the Appellate Court, and the record is now under review.

The statement of claim in the municipal court, with its amendments, alleged that plaintiff was a dealer in grain at Louisville, Kentucky, selling the same to his customers and purchasing the same for such sale from divers brokers, warehousemen and producers; that on or about May 23, 1917, plaintiff employed Williams & Monroe, brokers at Louisville, Kentucky, to purchase for him 10,000 bushels of corn at $1.57⅛ per bushel, and on or about June 12, 1917, he employed said brokers to purchase for him 10,000 bushels of corn at the price of $1.58 per bushel; that on or about May 23, 1917, Williams & Monroe employed defendants, who were brokers in the city of Chicago and members of the Board of Trade of the city of Chicago, to purchase 10,000 bushels of corn at $1.57⅛ per bushel on behalf of their undisclosed principal, plaintiff; that on or about June 12, 1917, Williams & Monroe employed defendants to purchase for an undisclosed principal, plaintiff, 10,000 bushels of corn at $1.58 per bushel; that said two orders, for 10,000 bushels each, were first contracted for by defendants with Ware & Leland and Lamson Bros., respectively; that said firms were both then members of the Chicago Board of Trade; that by agreement between defendants, Ware & Leland and Lamson Bros., the firm of Clement-Curtis & Co. was substituted to deliver both of said orders for 10,000 bushels of corn; that defendants in buying the corn provided for the delivery thereof to defendants at Chicago at said price during the month of July, 1917, on any day which the sellers might elect; that by means of the employment of defendants by plaintiff, defendants became the agents of plaintiff for the purpose of effecting said purchases and obtaining the delivery of the corn; that defendants were bound and undertook to exercise their skill, dili-

gence, zeal and fidelity for the interests of plaintiff which were created by the contracts of purchase; that defendants violated their undertaking, and before the persons from whom they had purchased the corn had offered to deliver the same, defendants, without the authority of plaintiff and without informing him of their action in that respect, released the persons from whom they had purchased the corn from their obligation to deliver the same; that plaintiff, on or about the 31st day of July, 1917, not having received delivery or tender of the corn, made tender to defendants of the sum of $31,512.50, the full amount of the purchase price of said 20,000 bushels of corn, and demanded that defendants deliver to plaintiff said 20,000 bushels of corn, which tender defendants refused, and refused to deliver any part of the corn upon the ground that the contracts for the delivery thereof had been canceled; that on July 31, 1917, the market price at Chicago of said corn was $2.40 per bushel.

The amended affidavit of merits admitted the receipt of the orders from Williams & Monroe for the purchase of the corn and the contracts with Clement-Curtis & Co. for such purchases, and alleged that upon making each contract for the purchase of corn they sent to Williams & Monroe a statement confirming the transaction, stating that it was made in accordance with and subject to the rules, regulations and customs of the Board of Trade of the city of Chicago and the rules, regulations and requirements of its board of directors and all amendments that are made thereto; that Williams & Monroe, upon receiving each of said statements, sent a like statement to the plaintiff; that on account of the declaration of war against Germany on April 6, 1917, and unusual conditions resulting and sure to result in the future in abnormally high prices, which would have enabled purchasers to compel sellers to settle their contracts at extortionate prices, the Board of Trade, in the exercise of its lawful authority, by resolution of the board

of directors provided that after July 5, 1917, all trading by members of the exchange in corn for delivery by grade, alone, in Chicago for the month of July should cease, and a committee was appointed to fix the true commercial value of contract grades of corn on that day; that the committee found the true commercial value to be $1.65 per bushel; that the resolution provided that any member so trading after said day should be deemed to have committed a grave offense against the good name of the association; that the plaintiff knew of a similar action previously taken respecting other grain; that after the passing of the resolution, on July 9, 1917, the sellers of the corn to defendants notified defendants of their intention to settle the contracts on the basis of the settlement price of $1.65 per bushel, in accordance with the resolution; that defendants immediately notified Williams & Monroe, who then first informed defendants that the purchases were made for the account of plaintiff, and Williams & Monroe protested against the settlement; that defendants and the persons from whom they had purchased such corn were members of the Board of Trade of the city of Chicago, and each of them was bound by its rules, regulations, by-laws and requirements. The affidavit of merits also set out a copy of the charter of the Board of Trade and a portion of the rules, regulations and by-laws for the management of the business of its members and the mode in which it should be conducted. The statement of claim and affidavit of merits formed the issue tried in the municipal court.

Two principal questions arise upon this record: First, what were the terms of the contracts between plaintiff and defendants? Second, was there a breach of such contracts?

If plaintiff employed defendants to purchase corn for plaintiff, and defendants, as such agents, entered into absolute and unconditional contracts for the purchase and delivery of the corn to plaintiff, and thereafter, without plaintiff's knowledge or consent, released and canceled said

contracts, then defendants are liable to plaintiff for such
damages as he may have sustained, if any, as the proximate
result of such unauthorized action, and it would be no de-
fense in an action to recover such damages if the agents
and the parties with whom they made the contracts were
members of the Board of Trade, and that such action in
so canceling such contracts was required of them by the
rules and regulations of the Board of Trade, and that their
failure to comply with such rules would render them guilty
of a grave offense against the good name of the Board of
Trade and subject them to severe penalties for such offense.

An agent who makes a contract in his own name for
an undisclosed principal has no power to destroy the con-
tract without the principal's consent, (*Samuels* v. *Northrup
Nat. Bank,* 234 Ill. 9,) and a broker making a contract for
the sale of property for another has no right to rescind the
contract without the knowledge or consent of his principal
unless the commercial usage was such at the place where
the sale was made. (*Saladin* v. *Mitchell,* 45 Ill. 79.)    If
the words of the contract are plain and unambiguous the
contract must be so construed as to give effect to the plain
and obvious import of the language used. (*Bearss* v. *Ford,*
108 Ill. 16; *Kansas City* v. *Public Service Com.* 276 Mo.
539.)    When the parties are competent to contract, with
the wisdom or folly of their contracts, made for a consid-
eration and without fraud, courts of law have no concern.
(*Florida Ass'n* v. *Stevens,* 61 Fla. 598; *Mizell Live Stock
Co.* v. *McCaskill Co.* 59 id. 322.)  One who contracts can
not be relieved from the obligation of his contract which
binds him to perform his agreement, and he cannot be de-
prived of the benefit of his lawful contract, and the rights
which it confers upon him, without his consent, and in every
case the question is what the contract was and what obli-
gation it created.    A party to a contract has no right to
impose a condition not provided for in the contract itself.
(*Illinois Conference Female College* v. *Cooper,* 25 Ill. 148.)

Neither would it be any defense in such case that by reason of the declaration of war against Germany on April 6, 1917, and the unusual conditions resulting, and sure to result in the future, in abnormally high prices, which would have enabled purchasers to compel sellers to settle their contracts at extortionate prices, the Board of Trade, by resolution of the board of directors, provided that after July 5, 1917, settlements of the contract in question should be made in the manner in which they were made. Neither would it be any defense to a suit for damages resulting from a breach of such contract that a compliance with such contract would entail great hardship upon defendants, or that by reason of the exigencies of the World War the fulfillment of the contract would be rendered extremely difficult, or even impossible, where defendant has failed to limit in the contract his liability in respect to such contingencies. *Illinois Central Railroad Co.* v. *McClellan,* 54 Ill. 58; *Illinois Central Railroad Co.* v. *Cobb, Christy & Co.* 64 id. 128; *Toledo, Wabash and Western Railway Co.* v. *Lockhart,* 71 id. 627; *Phelps* v. *Illinois Central Railroad Co.* 94 id. 548.

The facts in the case were not disputed. Plaintiff, during the time of the transactions in question, was buying and selling grain at Louisville, Kentucky. He bought corn in different States and furnished it to parties in various parts of the country and also bought it for export. He gave orders for the purchase of the corn in question to Williams & Monroe, members of the Chicago Board of Trade operating in Louisville, and the orders were transmitted to defendants. Contracts were made by defendants accordingly and reported to Williams & Monroe with the following statement: "We have the pleasure of confirming the following transactions made for your account and risk this day. All purchases and sales made by us for you are made in accordance with and subject to the rules, regulations and customs of the Board of Trade of the city of Chicago and the rules, regulations and requirements of its board of di-

rectors and all amendments that are made thereto." Each contract for purchase was confirmed by Williams & Monroe with this statement: "All orders for the purchase and sale of any article are received and executed with the distinct understanding that actual delivery is contemplated and in accordance with and subject to the rules, regulations and customs of the exchange upon which the order is to be executed and the requirement of its board of directors and all amendments that are made thereto, and that the party giving the order so understands and agrees." After the country had entered into the World War there was a great increase in the price of grain and the future market was oversold, so that more grain had been sold on the Board of Trade for future delivery than was possible to obtain or deliver. The sales of corn exceeded the entire product available for delivery, so that purchasers compelled sellers to settle their contracts at extortionate prices. On July 5, 1917, corn for delivery in July had reached a price of approximately $1.63 per bushel, and the unusual and abnormal conditions were sure to cause, and did cause, great future advances, as shown by the fact that on July 31, 1917, the price of cash corn was $2.40 a bushel. For the purpose of stopping the speculative trading in corn, which it was certain would have disastrous results, the board of directors adopted a resolution that after July 5, 1917, all trading by members of the board in corn for future delivery, by grade alone, in July, either for immediate or future delivery, should cease, and a committee of three was appointed to fix a price which should be a basis of settlement of all contracts for July open at the close of business that day, except such open contracts as should be performed by delivery or settled by agreement of the parties. On July 9, 1917, Clement-Curtis & Co. notified defendants of their purpose to settle their contracts at $1.65 per bushel, and upon notifying Williams & Monroe, defendants were first informed that the purchases were for the account of plaintiff.

While plaintiff's orders for the purchase of corn to Williams & Monroe were orders for an absolute and unconditional contract for the purchase and delivery of the corn, yet when Williams & Monroe employed defendants, who were members of the Board of Trade, to contract, as agents for the plaintiff, for the purchase of such corn, their employment as such agents was to purchase such corn in accordance with the rules, regulations and by-laws of the Chicago Board of Trade, and the contracts which defendants entered into for the purchase of such corn were not in accordance with plaintiff's original orders but were entered into "in accordance with and subject to the rules, regulations and customs of the Board of Trade of the city of Chicago and the rules, regulations and requirements of its board of directors and all amendments that are made thereto." These contracts being reported to Williams & Monroe and by them reported to plaintiff, together with the statement that "all orders for the purchase and sale of any article are received and executed with the distinct understanding that actual delivery is contemplated and in accordance with and subject to the rules, regulations and customs of the exchange upon which the order is to be executed and the requirement of its board of directors and all amendments that are made thereto, and that the party giving the order so understands and agrees," and plaintiff not having repudiated such contracts as having been made without authority but having ratified them by demanding their fulfillment and bringing this suit, is bound by the terms and conditions of such contracts so made by defendants with the parties from whom defendants purchased such corn. The contracts in question, therefore, were not contracts which were absolute and unconditional and to be fulfilled at all events, but were subject to rules, regulations and customs of the Board of Trade of the city of Chicago and the rules, regulations and requirements of its board of directors and all amendments that were made thereto during

315—34

the continuance of such contracts. This condition, therefore, became and was an integral part of the contract.

Members of the Chicago Board of Trade are bound by its lawful rules, regulations and by-laws, since they bind themselves in writing to obedience thereto as a condition precedent to membership. The Board of Trade does not buy or sell grain or other products, but only furnishes a place where its members meet and between certain hours of the day deal with each other in grain and other products under the rules, regulations and by-laws passed by the Board of Trade for the government of its members and the regulation and control of the business transacted by its members upon said board. *Pacaud* v. *Waite,* 218 Ill. 138.

By the legislative act incorporating the Board of Trade of Chicago the corporation was "authorized to establish such rules, regulations and by-laws for the management of their business and the mode in which it shall be transacted as they may think proper." The by-laws of the Board of Trade provided that all orders received by any member to buy or sell for future delivery any of the articles or commodities dealt with upon the floor of the exchange (except in exchange for cash property) must be executed in the open market in the exchange or during the hours of regular trading. The Board of Trade rules also provide that in case any member acting as a commercial merchant shall have made purchases or sales by order and for account of another, whether the party for whom such purchase or sale was made be a member of the association or not, such order shall be deemed to have been made with reference to and to be executed and carried out in all respects under the rules, regulations and customs of the association, the same as though they were terms incorporated into such order. The rules of the Board of Trade also provide for the manner in which settlements of contracts shall be made, and among other things in this respect provide: "In case any property contracted for future delivery is not delivered at

maturity of contract, the president shall appoint a committee of three from the membership at large, to be approved by the board of directors, which committee shall determine the true commercial value, as nearly as possible, of the commodity in question on the day of maturity of contract, and the price so established shall be the basis upon which settlement is made."

It is contended by plaintiff that the court erred in the admission in evidence of the resolution of the Board of Trade fixing $1.65 as the settlement price of the contracts in question. The laws, rules and regulations of the Board of Trade being an integral part of the contracts, it was not only proper but necessary to ascertain what those rules and regulations were in order to arrive at the true terms of the contracts, and the admission in evidence of the resolution, which was one of the requirements of the directors of the Board of Trade, was therefore not error.

It is claimed by plaintiff that he had no notice or knowledge of the laws, rules and regulations of the Board of Trade and that therefore he could not be bound by the resolution. Having been notified by Williams & Monroe that the contracts in question were made in accordance therewith, it was his duty to ascertain what such rules, regulations, by-laws and requirements were, and, if he did not then desire to be bound thereby, to repudiate the contracts. Not having done so he is as fully bound thereby as if he had full knowledge thereof.

Plaintiff's contention that defendants, who made the contracts in their own names, were bound by the resolution but that plaintiff was not is without foundation. He was not a stranger to the contracts but was one of the contracting parties himself.

The only contract of agency existing between plaintiff and defendants with reference to the purchase of the corn in question being for the purchase of corn "in accordance with and subject to the rules, regulations and customs of

the Board of Trade of the city of Chicago and the rules, regulations and requirements of its board of directors and all amendments that are made thereto," and defendants having purchased the corn in accordance with such rules and regulations, and having settled with the persons from whom such corn was purchased in accordance with such rules, regulations and customs of the Board of Trade and the rules, regulations and requirements of its board of directors, they were not guilty of any breach of their contract of agency and therefore were not liable to plaintiff in this suit. The court should have directed a verdict for defendants.

The judgments of the Appellate Court and municipal court are reversed and the cause remanded to the municipal court.

*Reversed and remanded.*

Dunn, Stone and Thompson, JJ., dissenting.

---

(No. 16468.—Reversed and remanded.)
The Sangamon County Mining Company, Plaintiff in Error, *vs.* Industrial Commission *et al.*—(Nellie Healy, Defendant in Error.)

*Opinion filed February 17, 1925.*