JOHN A. FRANKS COMPANY, INC. *vs.* S. WILLARD BRIDGES
& others.

Suffolk.   December 2, 1957. — April 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Broker*, Commodity broker.   *Commodity Exchange.   Contract*, With commodity broker.

The allegations of the declaration in an action by a wool dealer against
a firm of commodity brokers who were employed by the plaintiff to
execute in the firm name for the benefit of the plaintiff, subject to the
by-laws, rules and regulations of the commodity exchange, contracts
of sale of wool for future delivery by the plaintiff did not show a
breach of the broker-customer agreement between the defendants and
the plaintiff in that at the time for delivery of the wool pursuant to
the sale contracts, when the plaintiff was ready, able and willing to
deliver it, the defendants, without prior order by the plaintiff, liquidated
the sale contracts by executing for his account offsetting wool purchase
contracts and applied collateral deposited with them by him at the
time of the employment to the liquidation price.   [290]
In an action against a commodity exchange by a wool dealer who, through
a firm of brokers, members of the exchange, had sold "futures" con-
tracts on the exchange subject to its by-laws, rules and regulations,
allegations in the declaration that a liquidation of such contracts
ordered by the defendant exchange without the plaintiff's permission
and at above ceiling prices was wrongful as in violation of certain
by-laws and rules of the exchange were not supported by the provisions
of the by-laws and rules referred to, which did not show that such
liquidation was a violation thereof, and did not state a cause of action.
[294]

CONTRACT.   Writ in the Superior Court dated April 25,
1956.

The action was reported by *Forte*, J.

*Harold B. Dondis, (Malcolm B. Bayliss* with him,) for the
plaintiff.

*Donald R. Grant, (John R. Quarles & Edward B. Hanify*
with him,) for the defendants Bridges and others.

*George N. Hurd, Jr., (Charles C. Cabot* with him,) for the
defendant Wool Associates of the New York Cotton Ex-
change, Inc.

WHITTEMORE, J.   The judge in the Superior Court over-
ruled the demurrer to count 1 of the declaration, sustained
the demurrer to counts 6 and 7, and reported the case to
this court for determination of the correctness of that action.

1. We think the demurrer to count 1 was good and should
have been sustained.

Count 1 states a claim against individual defendants, part-
ners under the name of Walker & Co., as commodity brokers
(hereinafter called the brokers), alleged to be members of
the defendant Wool Associates of the New York Cotton Ex-
change Inc. (hereinafter, the Exchange).   It avers as follows:
from November 6 to December 13, 1950, the plaintiff, a wool
dealer, in the regular course of its business, employed the
brokers to sell for its account, through the Exchange, eight-
een "short futures contracts," for the delivery by the plain-
tiff during March, 1951, of stated amounts of wool and wool
tops;   pursuant to the employment, the brokers were au-
thorized by the plaintiff and agreed to execute and hold
these contracts in the firm name, for the benefit of the plain-
tiff;   the contracts were to be held subject to the by-laws,
rules and regulations of the Exchange and of the New York
Cotton Exchange Clearing Association, Inc., "as provided
in trading rule 13 . . . and more specifically subject to
trading rule 19 . . .";   the plaintiff deposited with the
brokers $92,441 as collateral to secure the performance of its
obligations under the futures contracts and paid the brokers
commissions for their services;   the brokers "executed the
aforesaid short futures contracts in New York and sent to
the plaintiff nine confirmation slips" attached to the decla-
ration;   during March, 1951, the plaintiff was ready, willing,
and able to perform its obligations under the contracts, but
on or about March 29, 1951, the brokers liquidated the con-
tracts "by executing for the plaintiff's account eighteen off-
setting contracts for the purchase of wool and wool tops, at
a liquidation price of $4.125 per pound for wool tops and
$3.515 per pound for wool," applying the collateral to the
liquidation price, the liquidation being "without prior order
from the plaintiff and hence . . . contrary to the authority

of and agreement by . . . [the brokers] to hold such short contracts on behalf of the plaintiff subject to the by-laws and rules, specifically contrary to section 77 . . . [and] section 77W . . . [of the by-laws] and trading rule 19 . . ." (the by-laws and rules and regulations of the Exchange and the clearing house being sometimes hereinafter referred to as the rules); and the liquidation also violated these sections and hence the authority of and agreement by the brokers in that the liquidation was at prices above the wool and wool top price ceilings of the plaintiff, as determined by §§ 1 and 2 of the Office of Price Stabilization, Economic Stabilization Agency, General Ceiling Price Regulation, 16 Fed. Reg. 808 (1951), issued pursuant to the Defense Production Act of 1950, 64 U. S. Sts. at Large, 803–807, and unlawful under that act.

There are a number of grounds stated in the demurrer to count 1, including these: the declaration does not state concisely and with substantial certainty the substantive facts necessary for a cause of action; the matters alleged are insufficient in law; and the allegations are vague, confusing, uncertain and indefinite.

We accept the plaintiff's description of a short futures contract as a hedge for "the protection of a fixed investment in a commodity through the execution on the futures market of a sale of the same commodity for future delivery." We note the plaintiff's illustrations that a trader owning wool which is to be for sale at a future time, or having bought at present prices the right to delivery of wool at a future time, may, at the cost of foregoing the gains of a possible rise in price, protect his investment against a possible fall in price by contracting presently to sell a corresponding quantity and quality of wool at present prices for delivery at that future time. We note also the plaintiff's contention that, in practice, in the period specified for delivery in the futures contract, "the trader has a choice of (1) delivering his wool, if deliverable, on the Exchange, (2) closing out his contract on the Exchange and selling his wool on the physical mar-

ket, or (3) continuing his hedged position for a further period. . . . If the trader wishes to close out his short sale, he executes through his broker an offsetting future purchase transaction, that is, a long contract which is offset against his short contract on the Exchange . . . . If the trader wishes to continue his hedged position, he closes out his futures contract by an offsetting purchase and simultaneously sells another contract falling due in a subsequent month."

We understand count 1 to aver that in the delivery period, March, 1951, the brokers closed out the plaintiff's contract on the Exchange, that is, liquidated it, by executing an offsetting purchase transaction, and that as this was done without prior order of the plaintiff it was contrary to the authority and agreement of the brokers to hold the contract subject to the specified rules and by-laws.

We think the specified by-laws and rules do not make it a term of the contract between the brokers and the customer that the brokers will not liquidate the contract without the prior order of the customer.

While all the by-laws and rules are incorporated in the declaration by reference we need look only to those which are specified as material. *Whitcomb* v. *Vigeant,* 240 Mass. 359, 362.

Trading rule 13 provides that "Every order . . . for the purchase or sale of wool tops or wools for future delivery, given to a member of the Exchange, as agent or broker of the party giving the order, shall be agreed to be subject to the By-Laws and Rules of the Exchange." Trading rule 19 reads: "All contracts for . . . future delivery . . . shall be binding upon members, and of full force and effect, until the quantity and qualities of wool tops or wools specified in such contracts shall have been delivered, and the price specified in said contracts shall have been paid. No contract shall be entered into with any stipulation or understanding between the parties, at the time of making such contract, that the terms of such contract as specified in Section 77 (Wool Top Contract) and Section 77W (Wool Contract) of the By-Laws are not to be fulfilled, or that the

wool tops or wools are not to be delivered and received in accordance with said Section." Sections 77 and 77W specify the form for future delivery contracts for wool tops and wool between members including a provision that the "contract is made in view of, and in all respects subject to the By-Laws, Rules and Regulations of the Wool Associates of the New York Cotton Exchange Inc.," and also that "members shall offer their contracts for clearance to the New York Cotton Exchange Clearing Association Inc., which shall become by substitution a party thereto in place of a member, and thereupon such Association shall become subject to the obligations thereof and entitled to all the rights and privileges of a member in holding, fulfilling and disposing thereof."

It is manifest that so far as rule 19 is relevant to a broker-customer agreement, rule 13 has made the agreement subject to rule 19. The reference to sections 77 and 77W brings forward no other rule. These sections refer to no specific rule and for our purposes operate to make rule 19 a part of members' contracts with each other. The issue is the meaning of rule 19. We do not think its meaning is that which the plaintiff asserts.

We think the purpose of rule 19 is to make the members of the Exchange liable on the futures contracts which they execute for their customers, as a means of insuring good faith in their dealings with each other and to bar any attempt of a member to avoid liability on the futures contract on the ground that he was acting as an agent. The rule governs the relations between the members and not the relations between members and their customers. It does not deal with liquidation. It does not say that a member may not close out a short futures contract by buying an offsetting contract. It does not say that a member may not buy an offsetting contract without the express order of his customer so to do. Rule 19 does not say that a member may not perform his obligation under the futures contract by buying an offsetting contract. It does not say he may so perform the futures contract only if he has the customer's assent. The facts stated in count 1 do not show a violation of rule 19;

they do not show that the short futures contracts were not performed.  On the plaintiff's statement of the three optional ways of performing a short futures contract, the facts set forth show that the short futures contracts were performed, that is, by buying offsetting contracts.

The plaintiff's alleged grievance is that, the plaintiff being ready, able, and willing to perform its obligations under the contracts, that is, we take it, by delivery of the merchandise, the brokers deprived the plaintiff of the opportunity of discharging its obligations in this way.  This is not alleged to be a violation of a custom of the trade or of an implication of the agency relationship or of an implication arising from the nature of the futures contract, as a contract to deliver merchandise.  It is alleged to be wrongful on the very narrow ground that being without prior order of the plaintiff it was in violation of rule 19 and for this reason in violation of the broker-customer contract.

We think the plaintiff's position is not strengthened by the allegation of violation of the price ceiling.  For the reasons stated we find no implication in rule 19 of an obligation not to close out a futures contract in violation of law or a price regulation.  Rule 19 does not deal with the issue.

The implication, in the customer-broker agreement, of restriction on acts of the brokers arising from the reference to the rules, is, we think, in substance this: The brokers will not take action with reference to the futures contracts which is in conflict with the rules and, notwithstanding express terms of the agreement or implications otherwise present, will take such action in respect of the contracts and their subject matter as the rules require.  Very likely the narrow presentation of count 1 is in recognition of this general implication.  The plaintiff's brief notices rule 12A[1] as a

---

[1] "Whenever through any exceptional contingency not provided for in the By-Laws and Rules, deliveries are not possible, and an extraordinary situation arises wherein a rigid enforcement of contracts generally would be grossly at variance with just and equitable principles of trade or the public interest, then upon application of any member, and after investigation, the Board of Governors, by a two-thirds vote of the whole Board, may accord relief in such manner as in their judgment the emergency may demand, with due regard, however, to upholding the rights of both buyer and seller and the fulfillment of their just obligations and to the best interests of the Exchange."

rule which "permits relief to be voted by the board of governors where delivery is impossible." The plaintiff asserts that to show authority to liquidate under this rule the defendants would have to prove that rule 12A had come into operation and that the facts to prove this could not be shown on demurrer. In our view of the case nothing turns on rule 12A, but it does perhaps suggest a possible difficulty in the way of proving a case under a general averment that a liquidation without an order of the plaintiff was a violation of implied terms of the broker-customer contract.[1] In any event we rule that the averments of count 1 do not state a violation of that contract.

If count 1 is intended to state a different or broader cause of action than that which we have discussed above, it fails for uncertainty and vagueness.

2. The demurrer to counts 6 and 7 was properly sustained.

Counts 6 and 7 state claims against the Exchange as a corporation of New York doing business in Massachusetts. Count 6 avers: the by-laws of the Exchange constitute under the laws of New York a contract between the Exchange and its members; the plaintiff, while acting in the regular course of business or trade, sold eighteen futures contracts on the Exchange in New York, through brokers who were members of the Exchange; the contracts were sold subject to the by-laws, rules and regulations of the New York Cotton Exchange Clearing Association, Inc.; the by-laws of the Exchange were intended to benefit the plaintiff as a holder of futures contracts executed on the Exchange; the plaintiff paid commissions and fees to the Exchange and became a third party beneficiary "of the by-laws and rules"; the Exchange, without permission of the plaintiff, ordered the contracts liquidated at the prices as stated in count 1;

---

[1] For an indication that action of the Exchange, in accordance with its by-laws, ordering liquidation of futures contracts at a fixed settlement price after the enactment of price control legislation would be sustained if taken impartially, honestly, and in good faith, see *Crowley* v. *Commodity Exchange, Inc.* 141 Fed. (2d) 182, 185, 186 (C. C. A. 2); *Daniel* v. *Board of Trade of Chicago,* 164 Fed. (2d) 815 (C. C. A. 7); *Cargill* v. *Board of Trade of Chicago,* 164 Fed. (2d) 820 (C. C. A. 7); *Thomson* v. *Thomson,* 315 Ill. 521; *Garcia Sugars Corp.* v. *New York Coffee & Sugar Exchange, Inc.* 7 N. Y. Sup. (2d) 532.

the liquidation was a violation of the by-laws of the Exchange in that it was above the ceiling prices of the plaintiff and a violation of the defense production act. Additionally it is alleged: "Since the liquidation was unlawful and without permission of the plaintiff, it constituted a violation of the by-laws of the Exchange, more specifically . . . by-laws section 77, . . . by-laws section 77W . . . and trading rule 19 . . .."

Count 7 was similar but included the allegation that the "plaintiff paid fees to the Exchange . . . and the Exchange, by acceptance of said fees, impliedly agreed to administer such contracts in accordance with the by-laws, rules and regulations of the New York Cotton Exchange Clearing Association, Inc.," and of the Exchange. The concluding allegation was similar to that in count 6.

The grounds of the demurrer were similar to those specified in the demurrer to count 1.

We need not decide the status of a count which merely alleges that the Exchange, without the plaintiff's permission, ordered the liquidation of the contracts without justification or at illegal, over-ceiling, prices. Counts 6 and 7 specify the only ways in which such action was wrongful, that is, because in violation of the specified by-laws and rules of the Exchange. As in the case of count 1, the issue is the meaning of the reference to sections and rules which operate to include rule 19, the only one of those specified which the defendants' conduct, as alleged, may be thought to violate. We do not think that rule 19 provides that the Exchange will not order a closing out of a futures contract without the assent of the customer, or at a price in violation of the price ceiling regulation or statute. It does not deal with that subject matter.

We do not reach the question whether in the circumstances the law of New York in respect of third party beneficiary contracts would apply and if so would give the plaintiff a right under the contract between the broker and the Exchange.

The parties in their briefs have carefully explored the

effect of the price ceiling regulation on Exchange transactions. As we view the case that issue is not presented.

So far as it may be suggested that counts 6 and 7 intend to state a broader claim than that which we find therein they fail, as does count 1, for uncertainty and vagueness.

3. The order overruling the demurrer to count 1 is reversed and an order sustaining the demurrer is to be entered in the Superior Court. The order sustaining the demurrer to counts 6 and 7 is affirmed.

*So ordered.*