**DANIEL et al. v. BOARD OF TRADE OF CITY OF CHICAGO et al.**

**No. 9416.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1947.

---

John T. Dempsey, Edward B. Casey, Joseph H. Taylor and Lawrence C. Mills, all of Chicago, Ill., for plaintiffs-appellants.

Weymouth Kirkland, Howard Ellis, William H. Symmes, Andrew C. Hamilton, Bennitt E. Bates, Floyd E. Thompson, Frederick Mayer, Abraham L. Rittenberg, Walter Bachrach, Walter H. Moses and Stanley J. Morris, all of Chicago, Ill., for defendants-appellees.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

This case is before us on the sufficiency of the amended complaint. The District Court sustained the defendants' motion to dismiss, and the plaintiffs have appealed. We look only to the allegations of fact in the amended complaint in order to determine its sufficiency. The following essential facts are alleged.

The plaintiff Floyd Daniel is a citizen of Texas. The plaintiffs Universal Mills and Union National Mill are corporations of Texas and Ohio, respectively. Miller B. Harrison and William C. Harrison are partners doing business under the name of R. L. Harrison & Son, and are citizens of Kentucky. All were licensees or permittees duly authorized to trade in grain on the Board of Trade of the City of Chicago. The defendant Chicago Board of Trade, hereinafter referred to as the Board, is a corporation organized and existing under the laws of Illinois, and the defendant Board of Trade Clearing Corporation, hereinafter referred to as Clearing, is a corporation organized and existing under the laws of Delaware and is an arm or instrumentality controlled and dominated by the Board and used by it to facilitate trading on the grain market maintained and operated by the Board as a contract market regularly designated by the Secretary of Agriculture, as provided by the Commodity Exchange Act.[1] The individual defendants are the directors, governors, and officers of the Board and of Clearing.

It is further alleged that the Board had always held itself out as an orderly market place in which a free, open, and orderly market in contracts in commodities is maintained so as to reflect fairly the general market prices of the commodities traded thereon, and the defendants and each of them represented that they conducted the business of said contract market in accordance with the law. It is alleged that at all times the Board and Clearing operated under rules, regulations, and by-laws. The following pertinent rules and by-laws were set forth in the complaint:

"Rule 251. Emergencies.—The Board shall have power to declare any day to be a holiday or to close the Exchange or to stop trading in any security or in any of the future contracts of any commodity, by reason of any emergency or otherwise, and to make such Regulations in regard to deliveries and settlement prices as it may deem proper because thereof. All Exchange contracts shall be subject to the exercise by the Clearing House of the powers reserved to the Clearing House by its Charter, By-Laws, and Resolutions."

"Rule 310. Settlement by Clearance.— All contracts, including contracts made by members upon behalf of non-members, shall be cleared through the Clearing House, and all such contracts shall be subject to the Charter, By-Laws, and Clearing Regulations of the Clearing House; except in security contracts unless otherwise stipulated in the bid or offer or it is otherwise agreed by the parties to the contract, or the Clearing House, either in the particular instance or in pursuance of its By-Laws and Resolutions, will not act in the matter."

"By-Law 45. Effect of Clearance. Buyers and sellers of commodities on change for future delivery may tender their contracts for clearance to the Clearing House, and if the Clearing House accepts the same, the buyer shall be deemed to have bought such commodity from the Clearing House, and the seller shall be deemed to have sold such commodity to the Clearing House. Such substitution shall be effective in law for all purposes. The original buyers and sellers shall be released from their obligations to each other and the clearing house shall be deemed to have succeeded to all the rights, and to have assumed all the obligations of the original parties to such contracts."

The plaintiffs alleged that they, as sellers, entered into certain futures contracts in grain, relying upon the integrity of the Board as a contract market and Clearing as an instrumentality of the Board, and also relying upon the individual defendants to perform their duties and obligations as required by law, and upon well-known and established customs and policies of the defendants. These alleged policies are exemplified by certain promulgated regulations exhibited with the complaint. The contracts were for Daniels, oats for delivery in May, 1946, wheat for delivery in September and December, 1946, and corn for delivery in July, 1946; for Universal Mills, corn for delivery in September, 1946; for Union National Mill, wheat for delivery in July and

---

[1] 7 U.S.C.A. §§ 1–17a.

December, 1946; and for the Harrisons, corn in May and July, 1946. All of these contracts were entered into prior to May 8, 1946. The market operated under ceilings on grain imposed by the Office of Price Administration, and grain was scarce because of wartime demands and certain Governmental action in buying grain to be delivered to it at prices well above the ceilings. On May 8, 1946, the Government authorities gave notice to the Board that effective at the opening of business May 13, 1946, the price ceilings on grain would be advanced substantially. To meet this emergency situation, the Board adopted Regulation 1894 which forbade further trading in the plaintiffs' outstanding futures contracts and the contracts of others similarly situated and ordered their liquidation at or below the old ceiling prices, and permitted trading in new futures contracts at the new ceiling prices. This conduct of the defendants met with the plaintiffs' approval.

Subsequently and upon contest of the validity of Regulation 1894 by other parties, the defendants reversed themselves by enacting Regulations 1897 and 1898 which reinstated trading in the plaintiffs' futures contracts at the new ceiling prices. This action was followed two weeks later by Regulation 1899 which terminated the plaintiffs' still outstanding futures contracts and ordered Clearing to settle them at the then prevailing market prices. The enactments of Regulations 1897, 1898, and 1899, it was alleged, were in violation of the duty and of the prior course of conduct of the defendants, and by them the defendants "wilfully, maliciously, and for their own personal gain through profits accruing to them through their individual brokerage houses continued said Board of Trade in operation when the open and free and orderly market had ceased to exist. * * * said Regulations were adopted for the purpose of continuing the operations on the Board of Trade for the personal advantage and gain of the defendants as hereinbefore alleged and for the added purpose of attempting to protect themselves against the possible liability which might be assessed against them by reason of the anti-trust action which had been brought by Cargill, Inc. * * *."

It is further alleged that Clearing gave notice to its members on June 4, 1946, as follows:

"You undoubtedly know that Board of Trade Regulations #1897 and #1898 are now being challenged in the Courts.

"Therefore, it is understood that all amounts now and hereafter paid to you under the terms of these Regulations or either of them shall be returned to us should either or both Regulations ultimately be held invalid by the Courts."

It is not alleged that the plaintiffs had paid to or received anything from Clearing. It is further alleged, "Pursuant to said notice, all members of 'The Clearing Corporation' held and are holding, directly or indirectly, said controverted monies and funds in trust for 'The Clearing Corporation'; and said monies and funds are trust funds under the provisions of the Commodity Exchange Act." It will be noted that there is no allegation that Clearing holds any funds, and the persons who are alleged to hold said funds are the members of Clearing and are not before the Court. It is the enactment of Regulations 1897, 1898, and 1899 of which the plaintiffs complain and from which stems their alleged loss.

The relief prayed is an adjudication of the rights of the parties, that funds held by the members of Clearing be decreed to be a trust fund, and for an accounting and the appointment of a receiver of the alleged fund.

Section 2 of the Commodity Exchange Act provides: "The words 'member of a contract market' shall mean and include individuals, associations, partnerships, corporations, and trusts owning or holding membership in, or admitted to membership representation on, a contract market or given members' trading privileges thereon."

The plaintiffs as traders on the market were members of the contract market maintained and operated by the Board. As such members, they were bound by the rules and regulations of said market. Thomson v. Thomson et al., 315 Ill. 521, 530, 146 N.E. 451, 455; Crowley v. Commodity Exchange, Inc., et al., 2 Cir., 141 F.2d 182, 185. Each transaction of the plaintiffs in the market

referred to in the amended complaint was subject to the rules, regulations, and by-laws promulgated by the Board and Clearing. Thomson v. Thomson et al., supra; Crowley v. Commodity Exchange, Inc., et al., supra. Such action as the Board and Clearing might take pursuant to such rules, regulations, and by-laws was binding upon the plaintiffs, as long as the Board and Clearing acted impartially, objectively, honestly, and in good faith. Avery v. Moffatt, 187 Misc. 576, 55 N.Y.S.2d 215, 220; Kalmanash v. Smith et al., 291 N.Y. 142, 51 N.E.2d 681, 687; Helfman et al. v. American Light & Traction Co. et al., 121 N.J.Eq. 1, 187 A. 540, 550. As such members of the contract market, the most that such plaintiffs could ask was that the defendants in the promulgation of the regulations authorized by the rules and by-laws, act in the utmost good faith under the circumstances confronting them at the time. That a serious crisis and emergency confronted the Board and Clearing when the Government suddenly and substantially changed the ceiling prices is apparent, and under such circumstances, it was the Board's duty to act in the interest of all traders and of the market in general. Acting under Rule 251, which was binding upon the plaintiffs, the Board had a right to stop trading in the plaintiffs' futures and to liquidate them, as it did. It had the further right to reinstate such trading when in its judgment the circumstances justified such action.

The plaintiffs had agreed to such action when they became members of the contract market and traded thereon. They entrusted their contracts to such bona fide action as the Board and Clearing might take in the interest of the market, in "any emergency or otherwise." From the allegations of the amended complaint, we find nothing in the action of the Board and Clearing that would in any manner vitiate the action they took, in the absence of conduct amounting to fraud.

██ As it is alleged that the plaintiffs had relied upon Clearing, on the state of these pleadings we must assume that the plaintiffs as sellers on the market for future delivery had tendered their contracts for clearance and that Clearing had accepted these contracts. The contention of the plaintiffs that the Board and Clearing were mere stakeholders is not borne out by the averments of the complaint. They were more than stakeholders. By the rules and by-laws themselves, Clearing became substituted as a seller to the buyer and a buyer to the seller. The plaintiffs had agreed to such an arrangement. By these rules and by-laws the Board and Clearing were themselves the representatives of both parties to the futures contracts for the purpose of preserving the best interests of all concerned in an emergency. They were in effect arbitrators selected by both parties. The Board and Clearing, if they acted in accordance with the rules and by-laws, violated no rights of the plaintiffs in the disposition they made of the plaintiffs' futures contracts, in the absence of an averment of bad faith amounting to fraud.

██ As to the plaintiffs' ·allegations that they relied upon certain former practices of the Board as exemplified by certain regulations theretofore entered by the Board and exhibited with the complaint, we are unable to agree that these practices amounted to market customs and precedents. The plaintiffs do not seem to question the power or authority of the Board to act as it did. They complain rather that action was not taken at the proper time, the proper time apparently being when it would do the plaintiffs the most good. This is a quarrel with the Board's exercise of its discretion. We do not control the Board's discretion. The limitation of its power is to be found in its utmost bona fides of action under the rules, by-laws, and regulations. The fact that in the several months prior to the incidents complained of, the Board adopted certain regulations that may have similar or common characteristics, does not create a pattern or precedent for future conduct upon which the plaintiffs could rely. The particular circumstances controlling the promulgation of these prior regulations must be assumed to have affected each case, since they are not attacked for fraud or bad faith. In the promulgation of its regulations, the Board acted in the conduct of the prudential affairs of the Board as any corporation would act in determining corporate policy. Because of the Board's relation to the public, it must,

as we have said before, act with the utmost objectivity, impartiality, honesty, and good faith. It owes that duty not only because it is affected with the public interest, but because of the complete confidence reposed in it by its members, and the further fact that the directors, governors, and officers of the Board and Clearing may themselves be members of the market, and as such have to act where their own private interests are concerned.

 It follows as a natural corollary that if the individual defendants, the directors, governors, and officers of the Board and Clearing, did not act in good faith, but acted to further their own selfish interests and for their personal gain, the corporate defendants' action cannot be bona fide, since the Board and Clearing can act only by their directors, governors, and officers. If the directors, governors, and officers were unfaithful to their responsibilities, the action taken by the Board and Clearing is bound to be tainted with such conduct. August Dahlberg v. Chicago City Bank & Trust Co., 310 Ill. App. 231, 33 N.E.2d 747; Anderson v. Missouri State Life Ins. Co., 7 Cir., 69 F.2d 794; Hering et al. v. Tait, Collector of Internal Revenue, 4 Cir., 65 F.2d 703.

We have no hesitancy in holding that in the absence of such infidelity to their trust by said directors, governors, and officers of the Board and Clearing as to amount to fraud, the acts and conduct of the defendants as set forth in the amended complaint are insufficient to entitle the plaintiffs to any relief.

Therefore, our remaining question on the pleadings is: Are the allegations of the amended complaint sufficient to charge fraud? We, of course, intimate nothing as to the alleged fraudulent conduct of the defendants. We only answer this question: Did the plaintiffs sufficiently charge fraudulent conduct?

We think that the plaintiffs' allegations are sufficient to charge fraudulent conduct. We have set forth the charges earlier in this opinion. These are not allegations of conclusions but are sufficient allegations of fact under Rule 9(b) of the Federal Rules of Civil Procedure.[2] In the face of these allegations, judgment of dismissal of the amended complaint cannot be sustained. Kohler et al. v. Jacobs et al., 5 Cir., 138 F.2d 440; United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827; Perrott v. United States Banking Corporation et al., D.C., 53 F.Supp. 953.

While we have held that the Board and Clearing were authorized to act as they did, we further hold that if, instead of acting as they purported to act in accordance with the rules and by-laws to meet an emergency and deal with it in a bona fide manner for the good of the market generally, they acted in their own selfish interest for their private gain, such action as alleged would vitiate the whole transaction.

Because of the specific allegation of fraudulent conduct on the part of the defendants, the amended complaint is sufficient. Unless the plaintiffs can prove such conduct, they would be entitled to no relief on this amended complaint.

The judgment of the District Court in sustaining the motion to dismiss and in dismissing the amended complaint is reversed.

---

[2] 28 U.S.C.A. following section 723c.