523 F.2d 355
 2 Fed. R. Evid. Serv. 518
 CASE & COMPANY, INC., Individually and on behalf of those
who at the close of trading on January 18, 1973 held future
contracts to sell January 1973 soybeans on the Board of
Trade of the City of Chicago, Plaintiff-Appellant,
v.
The BOARD OF TRADE OF the CITY OF CHICAGO et al.,
Defendants-Appellees.
 No. 74-1464.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 25, 1975.
Decided Sept. 12, 1975.
Rehearing and Rehearing En Banc Denied Oct. 30, 1975.
 
 Charles A. Boyle, Thomas R. Meites, Chicago, Ill., for plaintiff-appellant.
 Philip F. Johnson, Gary M. Elden, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, STEVENS and TONE, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 This appeal concerns the authority of the governing board of the Board of Trade of the City of Chicago to suspend temporarily a board rule limiting daily price fluctuations in soybean futures contracts. Plaintiff, a trader who was in a "short" position at the time of the rule suspension, sues the Board and the members of its governing body for damages alleged to have been incurred as a result of the higher prices caused by the suspension. The District Court entered summary judgment for defendants, which we affirm.
 
 
 2
 The Board of Trade of the City of Chicago (herein sometimes called "the Board"), a membership organization governed by a board of twenty directors (herein sometimes called "the directors"), is a "contract-market" subject to the Commodity Exchange Act, 7 U.S.C. § 1, et seq. The Act requires each contract-market to enforce its rules and regulations relating to trading requirements (section 5a(8), 7 U.S.C. § 7a(8)), and "(p)romptly (to) furnish . . . copies . . . of all changes and proposed changes" to the Secretary of Agriculture (section 5a(1), 7 U.S.C. § 7a(1)), who is authorized to disapprove any rule or regulation which he finds to violate any provision of the statute or of any rule, regulation or order thereunder (section 8a(7), 7 U.S.C. § 12a(7)). The Secretary has delegated his duties under the Act to the Act Administrator of the Commodity Exchange Authority. 17 C.F.R. § 140.1, et seq.
 
 
 3
 " Rules" adopted by the Board's membership and "regulations" adopted by its directors govern trading in commodities futures on the exchange and are incorporated into every contract. Cargill, Inc. v. Hardin, 452 F.2d 1154, 1156 (8th Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1770, 32 L.Ed.2d 135 (1972). The Board's rule 83 provides that the directors, upon ten hours notice, may provide by regulation for price limits on futures contracts in terms of fluctuations from the average closing price of the preceding business day. At the time of the events in issue in the case at bar, regulation 1823, adopted by the directors pursuant to rule 83, limited fluctuations in the price of soybean futures contracts to ten cents per bushel above or below the closing price on the previous business day. Rule 251, as it stood at that time, stated certain actions the directors were empowered to take "by reason of any emergency or otherwise." The Board's rule 70 is a broader provision authorizing the directors to adopt any regulations not in conflict with the rules and gives the regulations the same effect as rules.
 
 
 4
 The January 1973 soybean futures contracts involved in this case were standard agreements traded on the Board of trade in which a seller agreed to deliver and the buyer agreed to pay for 5,000 bushels of soybeans during the month of January 1973. The seller, who of course did not have the future soybeans in hand, was "short" by the amount he had agreed to deliver to the buyer, who in turn was "long" by that amount.
 
 
 5
 Trading in January 1973 futures contracts on the Board began in about February of 1972 and continued until the final seven business days of the month of January 1973. Until the first day of that month, a "long" or a "short" could leave the market only by "offsetting" his contracts by acquiring opposite contracts in the same commodity. See Board of Trade v. Christie Grain and Stock Co., 198 U.S. 236, 248-250, 25 S.Ct. 637, 49 L.Ed. 1031 (1905). After January 1, 1973, and before the last seven trading days in that month, the contract could be satisfied by either offset or delivery of the grain. In the last seven trading days of January the contract could be satisfied only by delivery of the grain. Thus a "short" who wanted to deliver could do so at any time during January, and a "long" wanting delivery could obtain it by remaining in that position until the last seven trading days.
 
 
 6
 On January 18, 1973, plaintiff Case & Company, Inc. was "short" twenty January 1973 soybean futures contracts, calling for a delivery of a total of 100,000 bushels of soybeans, with only two trading days left before the last seven trading days of the month. The "cash" market price of soybeans was well above the futures prices, soybeans having been made scarce by high export demands. The situation at that time was described by the Regional Director of the Commodity Exchange Authority as follows:
 
 
 7
 "At the close of business on Thursday, January 18, the Board was faced with a very difficult situation. Prices of the January future had been up the limit at the close on the three previous days, with unsatisfied bids at the top price each day. The Board had to consider the possibility that with a 10-cent fluctuation limit for the final two trading days, shorts might not be able to cover their contracts."
 
 
 8
 After trading closed on that day, the chairman of the board of directors called a special meeting of the directors to be held the next morning, two hours before the opening of trading, for the purpose of determining the action to be taken in view of the divergence between the market and futures prices of soybeans. At the meeting the directors present voted ten to two to suspend the portion of regulation 1823 applying to soybean futures, thereby removing the ten-cent limitation on the amount soybean futures could rise or fall in a trading day. The decision was posted, i. e., made known to traders, at the close of the meeting, which was less than one hour before trading was scheduled to start.
 
 
 9
 During the day the secretary of the board of directors mailed written notice of the directors' action to the Commodity Exchange Authority in Washington, D. C. According to his affidavit filed in support of the motion for summary judgment, he also telephoned the Act Administrator of the C.E.A. shortly after the meeting to advise him orally of the action taken. Since, however, the Administrator, in his affidavits filed in this case, did not mention this telephone conversation, and plaintiff argues that this raises doubts as to whether it occurred, we treat the oral notice as disputed and disregard it.
 
 
 10
 The trading limits having been removed, the price of January 1973 soybean futures contracts rose from $4.691/2 per bushel at closing on January 18 to $4.95 per bushel at the opening on January 19. The price at closing that day was $4.98-$5.00 per bushel and on January 22, the last trading day for January 1973 soybean futures, it closed at $4.95-$4.99. Case & Company liquidated its position on January 19 for just under $4.92 per bushel and claims to have lost $22,000 as a result of the suspension of the soybean trading limits.
 
 
 11
 Case filed this action on behalf of itself and, purportedly, others who at the close of trading on January 18, 1973 held futures contracts to sell January 1973 soybeans on the Board, naming as defendants the Board of Trade and the members of its board of directors. The defendants were alleged to have violated section 5a(8) of the Act, which requires obedience to the Board's own rules and regulations, because they failed to give the ten hours advance notice of their action which Case contended was required by rule 83; and to have violated section 5a(1) of the Act by failing promptly to notify the Secretary of the proposed change and the actual change in regulation 1823. The parties submitted the case to the District Court on cross motions for summary judgment supporting their respective motions with affidavits. The District Court entered summary judgment for the defendants, holding that, assuming rule 83 applied, the defendants did not violate section 5a(8) because rule 251, the emergency rule, took precedence over rule 83. The court further held that the defendants did not violate section 5a(1) because the letter of January 19 constituted prompt notice to the Administrator.
 
 Procedural Matters
 
 12
 It is undisputed that a private cause of action may be maintained under the Commodity Exchange Act. See Deaktor v. L. D. Schreiber & Co., 479 F.2d 529 (7th Cir. 1973), rev'd on other grounds sub nom., Chicago Mercantile Exchange v. Deaktor, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973).
 
 
 13
 The District Court did not determine whether the action should be maintained as a class action. See Fed.R.Civ.P. 23(c)(1). Neither side complains of this omission. In an appeal from a decision on the merits made without the prior class determination required by Rule 23(c)(1), the reviewing court will treat the case as one brought by the named plaintiff only and not as a class action. Jackson v. Lynn, 165 U.S.App.D.C. 172, 506 F.2d 233, 236 (1974); Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974); Dorfman v. Boozer, 134 U.S.App.D.C. 272, 414 F.2d 1168, 1171 n. 8 (1969).[1] Thus, in Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), the District Court having failed to make an adequate class certification, the Supreme Court ordered the complaint dismissed because it found the case moot as to the named plaintiffs. We accordingly treat this case as brought solely on behalf of Case & Company, Inc., the named plaintiff.
 
 
 14
 Although plaintiff, as well as defendants, moved for summary judgment, it now contends that summary judgment was inappropriate because there are certain disputed questions of fact. The filing of a cross motion for summary judgment does not of course preclude plaintiff from taking this position. 6 J. Moore, Federal Practice P 56.13 (2d ed. 1974). We conclude, however, for reasons that will appear from our disposition of the merits, that there is no genuine dispute as to any material fact. Disposition by summary judgment was therefore appropriate. Cf. Hochfelder v. Midwest Stock Exchange, 503 F.2d 364 (7th Cir. 1974), cert. denied, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); Butterman v. Walston & Co., Inc., 387 F.2d 822 (7th Cir. 1967).
 
 
 15
 Among the materials submitted in support of the defendants' motion for summary judgment was an affidavit of the Chairman of the Board of Trade which lists and summarizes some forty instances in the past thirty-five years in which emergency action not specifically covered by rule 251 was taken by the board of directors. In addition, an affidavit of the Act Administrator contains a statement of his interpretation of the Act and a rule of the Board.
 
 
 16
 Plaintiff contends that the list of the forty instances is hearsay and therefore would not be admissible in evidence as required by Fed.R.Civ.P. 56(e), and should not have been considered by the court in ruling on the motions. We think the list is in the nature of a summary of voluminous evidence, which would be admissible at trial if the underlying evidence is made available to the opposing party. 4 J. Wigmore, Evidence § 1230 at n. 3 (Chadbourn rev. 1972); see also Fed.R. of Evid. 1006, which could properly have been considered by the District Court as a guide at the time this case was decided. United States v. Johnson, 515 F.2d 730, 732 n. 4 (7th Cir. 1975); United States v. McCarthy, 445 F.2d 587, 591 (7th Cir. 1971). Plaintiff's counsel had an adequate opportunity for discovery and could have inspected the records of the Board of Trade which are summarized in the affidavit and challenged any claimed inaccuracies. It was not error to consider the list in connection with the motion for summary judgment.
 
 
 17
 Plaintiff also objects that the affidavit of the Act Administrator contains conclusions as to the meaning of the Act and a rule of the Board and whether the Act and the rule were complied with, which are inadmissible in evidence because they are opinions on ultimate issues in the case, and therefore, under Rule 56(e), should not have been considered in connection with defendants' motion for summary judgment. The ultimate issue rule, however, is abolished by Rule 704 of the Federal Rules of Evidence, which, as we have said, could properly have been used as a guide by the District Court. Opinion testimony that would be admissible at trial may be submitted in an affidavit. 6 J. Moore, Federal Practice P 56.22(1), at 2808, 2812-2813 (2d ed. 1974). The fact that the Administrator's interpretation given in the affidavit was post litem motam detracts from its persuasive force, as does the fact that it was not made in the course of rendering a decision in an adversary proceeding. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 290, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). These defects, however, go to the weight and not the admissibility of the Administrator's interpretation, which still may be looked to for guidance, Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed.124 (1944), especially when the history and language of the Act is unclear, Fishgold v. Sullivan Drydock & Repair Corp.,supra, 328 U.S. at 290, 66 S.Ct. 1105. The persuasiveness of an administrative interpretation "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., supra, 323 U.S. at 140, 65 S.Ct. at 164; see also Brennan v. Great American Discount & Credit Co., 477 F.2d 292, 297 (5th Cir. 1973), cert. denied, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973). It was thus permissible for the District Court to consider the affidavit of the Act Administrator. We turn now to the merits.
 
 Rule 83 and Section 5a(8) of the Act
 
 18
 Plaintiff argues that the Board and its directors violated the Board's rule 83 and hence section 5a(8) of the Commodity Exchange Act by failing to give ten hours notice of its action suspending the portion of regulation 1823 governing soybean futures price fluctuations and thereby removing the trading limits on the price of January 1973 soybean futures. Rule 83 provides in pertinent part as follows:
 
 
 19
 "Fluctuations in Prices. The Board (of directors) at any time, upon ten hours' notice by Regulation, may provide that there shall be no trading during any day in any grain . . . for delivery in any specified month at prices more than a fixed limit above or below the average closing price of the preceding business day."
 
 
 20
 The District Court assumed without deciding that rule 83 applied when the directors removed all limits on trading as well as when limits were established or changed, but determined that this rule was overridden by the provisions of rule 251, which reads in pertinent part as follows:
 
 
 21
 "Emergencies. The Board (of directors) shall have power to declare any day to be a holiday or to close the Exchange or to stop trading in any security or in any of the future contracts of any commodity, by reason of any emergency or otherwise, and to make such Regulations in regard to deliveries and settlement prices as it may deem proper because thereof. All Exchange contracts shall be subject to the exercise of such power."
 
 
 22
 The emergency powers of the directors under rule 251 were held by the District Court not to be limited to those specifically enumerated in the rule. A contrary interpretation, said the court, would unduly restrict the directors' power and flexibility in dealing with emergencies and in insuring an orderly market.
 
 
 23
 Plaintiff's principal contention on appeal is that the specific, which it says is rule 83, should govern the general, which is rule 251, especially since rule 251 on its face specifies only certain enumerated powers of the Board.
 
 
 24
 The first defect in plaintiff's argument is that rule 83 does not apply to the action taken by the directors in this case. That rule requires ten hours notice only when the directors adopt a regulation imposing price limits. It does not apply to action removing price limits, temporarily or otherwise, and thereby creating a free market. Apparently the purpose of rule 83 is to give traders time to amend their orders when price freedom is restricted, but, whatever its purpose, it does not purport to deal with the removal, as opposed to the imposition, of price limits.
 
 
 25
 The fact that, on occasions after January 19, 1973 when the board of directors suspended a part of regulation 1823, more than ten hours notice of the suspension was given does not support plaintiff's position. It is uncontroverted that in each of these situations the directors were able to meet far enough in advance of the time the suspensions were to become effective to permit the giving of advance notice. In those instances the Board simply gave the notice when its determination was reached. In none of them did the directors purport to be acting pursuant to rule 83.
 
 
 26
 In addition, we agree with the District Court that the action taken by the directors was authorized by rule 251, under which they were acting. If the Board of Trade is to comply with the duties imposed upon it by the Commodity Exchange Act, 7 U.S.C. §§ 7, 7a, the directors must have broad and flexible powers that will enable them to insure an orderly market and prevent manipulation in prices or the cornering of any commodity. A construction of rule 251 that would limit the powers of the directors to those specifically enumerated in the rule would impair the Board's ability to perform its statutory duties. As the Act Administrator stated in his affidavit filed in this case,
 
 
 27
 "It is the view of the Commodity Exchange Authority that Rule 251 of the Board of Trade of the City of Chicago gives the Exchange broad authority to take action under emergency situations to assure the maintenance of an orderly market. The rule has been invoked by the Exchange on a number of instances in the past for this purpose and the actions by the Exchange have not been restricted to actions expressly referred to in Rule 251. It is my view that if Rule 251 or a similar rule were applied so as to seriously limit the actions that an exchange could take to maintain an orderly market and to prevent unreasonable fluctuations in price, price manipulations, corners, and other market disruptions, the exchange would not be meeting its statutory duties under the Act."
 
 
 28
 Our interpretation of rule 251 is consistent with the Board of Trade's long-standing interpretation of that rule, as shown by some forty instances in which the directors adopted measures not specifically enumerated in the rule during the thirty-five years preceding this litigation. The construction placed upon its own rule by the Board over many years is very persuasive if not controlling. As the court said in Moses v. Burgin, 445 F.2d 369 (1st Cir. 1971), cert. denied, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971), concerning a rule of a stock exchange,
 
 
 29
 "Whatever the terminology, the nature of the obligations imposed by such rules is to be determined primarily on the basis of the construction which the exchanges that adopted the rules gave to them. A court is not free to regard the problem as a statutory interpretation issue of first impression." 445 F.2d at 382 (footnote omitted)
 
 
 30
 See also Intercontinental Industries, Inc. v. American Stock Exchange, 452 F.2d 935, 940 (5th Cir. 1971), cert. denied, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972); cf. Joy v. Ditto, 356 Ill. 348, 357, 190 N.E. 671, 675 (1934).
 
 
 31
 Plaintiff cannot take much comfort from the amendment of rule 251 after the events complained of here to express the Board's emergency powers in broad general terms and provide that any temporary action taken under the rule "shall supersede all contrary or inconsistent rules or regulations during the pendency of the emergency." By amending the rule, the Board of Trade did not impliedly admit the correctness of plaintiff's position, but rather sought to remove any room for argument and foreclose the possibility of any future disputes like the one at bar.
 
 
 32
 Even if rule 251 were construed not to authorize actions other than those it specifies, the directors would have had the power to amend regulation 1823 under the Board's rule 70 which authorized the directors, without restriction, to "adopt regulations not in conflict with the Rules, which shall have the binding effect of the Rules." The power to adopt regulations includes the power to amend them. The removal of the price trading limitation was the amendment, albeit temporarily, of a regulation. Since rule 83 was inapplicable to the action taken by the directors and no other rule of the Board prohibited that action, the directors were authorized by rule 70 to amend regulation 1823.
 
 Section 5a(1) of the Act
 
 33
 Section 5a(1) of the Act, 7 U.S.C. § 7a(1), requires that a commodity exchange "promptly furnish the Secretary of Agriculture copies . . . of all changes and proposed changes" in its regulations. Plaintiffs' contention is that the section requires advance notice of a proposed change, and, further, that whether notice was given "promptly" is a question of fact that should not have been resolved on motion for summary judgment.
 
 
 34
 We find some guidance on the advance notice question[2] in section 8a(7) of the Act, 7 U.S.C. § 12a(7), which authorizes the Secretary of Agriculture to disapprove a regulation which is "made, issued or proposed" by a commodity exchange. This provision contemplates that a regulation which the Secretary is to review may already be in effect, a situation which will occur when the adoption of a regulation comes so soon after it is proposed that a notice which would permit an opportunity for the Secretary's review is impracticable. This will inevitably be the case when a regulation is adopted or changed to deal with an emergency. The construction of the Act urged by plaintiff, which would in effect require that the Secretary be given sufficient advance notice of a proposed change to permit him to review the proposal before its adoption, would prevent the commodity exchanges from dealing effectively with emergencies, a result which we cannot believe Congress intended.
 
 
 35
 C.E.A. regulation 1.41, 17 C.F.R. § 1.41 (1974), adopted after the events here, requires that copies of a proposed change in a regulation of an exchange be filed with the agency three weeks prior to its effective date, but provides that in "unusual circumstances in which such notice is impractical, . . . as much notice as the circumstances permit" must be given. According to the Act Administrator's affidavit, the agency has interpreted this regulation, as it interpreted section 5a(1) before the adoption of the regulation, not to require advance notice of a change "when such advance notice is impracticable under the circumstances." The Act Administrator also said:
 
 
 36
 "The Commodity Exchange Authority has construed the above notice (the letter of January 19) as compliance with the requirements of section 5a(1) and has neither instigated nor contemplates instigating a proceeding against the Board of Trade of the City of Chicago for violation of such action."
 
 
 37
 Accordingly, the interpretation of section 5a(1) by the agency charged with its enforcement is consistent with the one we adopt.
 
 
 38
 The facts upon which the question of the promptness of the notice depends are not disputed. A market condition which the directors could properly view as an emergency existed. The special meeting of January 19 was not called until after the end of trading the preceding day. The suspension of price limits on January 1973 soybean futures contracts was first proposed and was adopted at that meeting, and for reasons the directors could properly regard as sufficient, was to commence that same morning at the opening of trading. Notice could not have been given to the Secretary's delegate in time to permit the C.E.A. to consider intelligently and pass on the action of the directors before it was to become effective. In these circumstances, the mailing of written notice the same day the suspension was proposed and adopted could not have been found to be untimely. Moreover, since, as we have held, the suspension was not unlawful, there was no basis upon which the Secretary's delegate could have set it aside even if lengthy advance notice had been given. There was no genuine issue of material fact relating to the promptness of the notice.
 
 
 39
 Affirmed.
 
 
 
 [1]
 But see Ridinger v. General Motors Corp., 474 F.2d 949 (6th Cir. 1972), where the court, apparently sua sponte, remanded the case to the district court because of the failure to rule on a Rule 23 certification request, rather than treating the case as an individual action. (At the same time the court instructed the district court to reconsider its ruling on the merits in light of an intervening Sixth Circuit decision.) But cf. Garrett v. City of Hamtramck, 503 F.2d 1236, 1243-1246 (6th Cir. 1974)
 
 
 [2]
 The District Court found the legislative history of section 5a(1) ambiguous on the question of whether both notice of a proposed change and notice of a change had to be sent when the change was proposed and adopted at the same meeting, and we agree. The District Court said on this subject:
 "The legislative history does not provide a clear expression of the intendment of Section 5a(1). The section first appeared as a part of HR 9623 which passed the House June 4, 1934 but died there because the 73d Congress concluded a short time thereafter. House Report No. 1637 (May 15, 1934) accompanying that bill notes only: 'Section 7 of the bill inserts a new section (sec. 5a) in the Grain Futures Act which requires boards of trade which have been designated as contract markets to (1) furnish the Secretary copies of their by-laws, rules, resolutions, etc., and changes therein.' Without more, the statement connotes that the prompt furnishing of adopted changes is sufficient. HR 6772, which is the present Commodity Exchange Act, carried forth Section 5a(1) and House Report No. 421 (March 18, 1935) adopted the language of House Report 1637 with respect to this section. Nothing more was added. The House and Senate Hearings add nothing to the meaning of Section 5a(1). See Hearings Before the Committee on Rules of the House of Representatives on H.R. 9623, 73d Cong. 2d Sess. (May 16, 1934); Hearings Before the Committee on Agriculture and Forestry on H.R. 6772, 74th Cong., 2d Sess. (Apr. 21-23, 1936). See also House Report No. 1668; Letter from Secretary of Agriculture, Sen.Doc. No. 61, 73d Cong., 1st Sess. (May 13, 1933)."