Robert LAGORIO, Individually and on behalf of those who at the close of trading on June 21, 1973 held future contracts for July, August soybeans on the Board of Trade of the City of Chicago, Plaintiffs-Appellants,

v.

The BOARD OF TRADE OF the CITY OF CHICAGO et al., Defendants-Appellees.

No. 75–1523.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1976.

Decided Feb. 13, 1976.

Edwin H. Conger, Chicago, Ill., for plaintiffs-appellants.

Gary M. Elden, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

Plaintiff is a trader on the Chicago Board of Trade who contends that a suspension of trading ordered under the Board's emergency rule was unauthorized by the rule and amounted to market manipulation in violation of 7 U.S.C. § 13(b). The District Court entered summary judgment for the defendants, which we affirm.

On June 21, 1973, plaintiff held two futures contracts to buy July 1973 soybeans and two contracts to buy August 1973 soybeans. That day the Board's directors suspended trading in futures contracts for July, August, and September 1973 soybeans, allowing only liquidation of existing contracts and new sales for actual delivery.[1] The directors' action was taken in response to a telegram from the Administrator of the Commodity Exchange Authority stating that "an emergency situation exists in soybeans and soybean meal futures" and requesting the Board to take precisely this action "under your Rule 251 or other appropriate rule."[2] The existence of an emergency is undisputed. Shortly after the directors acted, a price decline began, and on July 11 plaintiff was forced by his inability to meet margin requirements to liquidate at a substantial loss. There is a dispute about whether the price decline was due to the suspension of trading or an export embargo imposed on June 27.

The District Court stayed the proceedings pending a response by the Commodity Exchange Commission to plaintiff's application for the institution of disciplinary proceedings against the defendants. Cf. *Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973). The Commission denied plaintiff's application, holding that Rule 251 authorized the Board's action. The District Court then granted summary judgment in favor of the defendants.

Plaintiff filed this action for damages against the Board and its directors on behalf of himself and others similarly situated. Since the District Court failed to make a class determination, we treat this as an action by the named plaintiff only, rather than a class action. *Case & Co. v. Board of Trade*, 523 F.2d 355, 360 (7th Cir. 1975).

Although plaintiff alleged in his complaint that the directors' action exceeded their powers under Rule 251 and amounted to market manipulation in violation of 7 U.S.C. § 13(b), he did not allege that the directors acted in bad faith. Compare *Daniel v. Board of Trade*, 164 F.2d 815, 819–820 (7th Cir. 1947). The only inference that can be drawn from the undisputed facts, the directors having merely acceded to the Administrator's request, is one of good faith.

Plaintiff concedes, as he must in view of *Daniel v. Board of Trade, supra*, 164 F.2d at 819, that Rule 251 allowed the Board to suspend all trading except sales for liquidation, but he argues that the Board could not also except from the suspension new sales by owners of the physical commodity. (In fact, no new sales by owners of the physical commodity took place between the time the Board suspended trading and the time plaintiff liquidated his holdings.)

In *Case & Co. v. Board of Trade, supra*, we held that Rule 251 grants the Board "broad and flexible powers . . . to insure an orderly market and prevent

---

1. The Board's organization, the regulatory scheme, the nature of futures contracts, and trading practices are described in *Case & Co. v. Board of Trade*, 523 F.2d 355, 358–359 (7th Cir. 1975).

2. At that time Rule 251 provided in pertinent part as follows:

"Emergencies.—The Board shall have power . . . to stop trading . . . in any of the future contracts of any commodity, by reason of any emergency or otherwise, and to make such Regulations in regard to deliveries and settlement prices as it may deem proper because thereof. All Exchange contracts shall be subject to the exercise of such power."

The rule has since been amended to express the Board's emergency powers in broad general terms. See *Case & Co., supra* n. 1, 523 F.2d at 363.

manipulation," 523 F.2d at 362. We also held that "[t]he construction placed upon its own rule by the Board over many years is very persuasive if not controlling." *Id.* at 363. In the case at hand, an affidavit by the president of the Board lists nine instances between 1936 and 1955 in which the Board took the same action it took here, and additional instances in which it allowed liquidation sales only. Added weight is given the Board's interpretation by the concurrences of the Administrator and the Commission. See *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 305, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), in which the Supreme Court stressed the Commission's expertise in construing the rules of commodity exchanges, and *Case & Co. v. Board of Trade, supra,* 523 F.2d at 361, in which this court said the Administrator's views "may be looked to for guidance." As in *Case & Co.,* we conclude that the Board's action was authorized by Rule 251.

■■■■ As we noted earlier, there is a dispute about whether the Board's action caused the price decline. The plaintiff argues that if this causal connection exists, the Board's action amounted to manipulation in violation of 7 U.S.C. § 13(b). He relies on *Cargill, Inc. v. Hardin,* 452 F.2d 1154, 1163 (8th Cir. 1971), in which the court defined manipulation as intentional conduct "which has resulted in a price which does not reflect basic forces of supply and demand." We have found no authority for applying this definition to actions taken in good faith by a commodity exchange such as the Board in the exercise of its regulatory duties.[3] Inevitably, these actions sometimes affect price. Yet we cannot believe that Congress intended by adopting section 13(b) to impose liability for the good faith performance of regulatory duties imposed by other sections of the same statute. See 7 U.S.C. §§ 7, 7a. The contrary construction urged by the plaintiff here would deter vigorous regulatory action, and like the construction of Rule 251 urged by the plaintiff in *Case & Co.,* "would impair the Board's ability to perform its statutory duties." 523 F.2d at 362. We therefore hold that the Board is not guilty of market manipulation when it acts in good faith under Rule 251. *Cf. Daniel v. Board of Trade, supra,* 164 F.2d at 819–820.

We conclude, on the basis of the undisputed facts, that the defendants did not violate Rule 251 or engage in market manipulation. The summary judgment in their favor is therefore affirmed.

Affirmed.

---

**3.** We note that the section of the Act providing for cease and desist orders by the Secretary of Agriculture or the Commission against manipulation (7 U.S.C. § 13b) specifically exempts contract markets (perhaps because section 13a provides for cease and desist orders against contract markets), while the provision making manipulation of price an offense (7 U.S.C. § 13(b)) does not contain such an exemption.