**BOARD OF TRADE OF the CITY OF CHICAGO, Plaintiff,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Defendant.**

**No. 92 C 2147.**

United States District Court, N.D. Illinois, E.D.

April 7, 1993.

Terry Smith, Mark D. Young, Kirkland & Ellis, Washington, DC, Garrett B. Johnson, Kirkland & Ellis, Chicago, IL, for Board of Trade of City of Chicago.

Madeleine Sullivan Murphy, U.S. Attys. Office, Chicago, IL, for Commodity Futures Trading Com'n.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Board of Trade of the City of Chicago ("CBOT") brought this action for declaratory judgment and injunctive relief against the Commodity Futures Trading Commission ("CFTC"). CBOT seeks review of a CFTC decision which vacated a CBOT disciplinary action against a former CBOT member. Additionally, CBOT seeks an order declaring (1) that CFTC exceeded its statutory authority in holding that CBOT did not have disciplinary jurisdiction over the former member; and (2) that CBOT's efforts to impose sanctions upon its former member were in accordance with the policies of the Commodity Exchange Act ("CEA"), codified at 7 U.S.C. §§ 1–26 (1988 and Supp. III

---

1991). CBOT and CFTC have filed cross-motions for summary judgment. For the following reasons, we grant CFTC's motion for summary judgment and deny CBOT's motion.

## SUMMARY JUDGMENT AND LOCAL RULE 12

■ Before we address the background and issues of this case, we must first address a threshold issue of procedure. When analyzing a motion for summary judgment, we engage in a two-step process. We first decide whether there exists a genuine issue of material fact. Only then do we decide whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When analyzing the facts presented, a court must view the record and all inferences to be drawn from it in a light most favorable to the non-movant. *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991). Cross-motions for summary judgment present a more difficult task because we must consider two separate factual scenarios. As applied to this case, we must in the first instance construe the facts in the light most favorable to CBOT; in the second instance, we must construe the facts in a light most favorable to CFTC. *See Phaup v. Pepsi–Cola General Bottlers, Inc.,* 761 F.Supp. 555, 557 n. 5 (N.D.Ill.1991).

In this district, Local Rules 12(M) and 12(N) require the parties moving for and opposing summary judgment under Rule 56 of the Federal Rules of Civil Procedure to state the material facts of the case. Local Rule 12(M) requires the moving party to provide a supporting memorandum of law, including a statement of material facts as to which that party contends there is no genuine issue and which entitles that party to summary judgment as a matter of law. The movant is required to set forth each fact in a short-numbered paragraph and include a specific reference to the record to support that fact.

Local Rule 12(N) requires the party opposing summary judgment to submit a supporting memorandum of law, including a supporting statement responding to each numbered paragraph in the movant's 12(M) statement of material facts. The party opposing summary judgment must state any disagreement to the material facts set forth by the moving party. If the party opposing summary judgment fails to state any disagreement with the facts set forth in the movant's statement, those facts are deemed admitted. These requirements have been strictly enforced in this district; *see Pasant v. Jackson Nat'l Life Ins. Co.,* 768 F.Supp. 661, 663 (N.D.Ill. 1991); *Davis v. Frapolly,* 756 F.Supp. 1065, 1069–70 (N.D.Ill.1991), and in the Court of Appeals. *See Brown v. United States,* 976 F.2d 1104, 1108 (7th Cir.1992); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir. 1992); *Capitol Converting Equip., Inc. v. LEP Transp., Inc.,* 965 F.2d 391, 394–95 (7th Cir.1992); *Bell, Boyd and Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990).

In the present case, CBOT's motion for summary judgment includes a statement of material facts that, with minor exception,[1] complies with Local Rule 12(M). CFTC responded with a 12(N) statement contesting certain facts set forth in CBOT's motion and agreeing to others. Additionally, CFTC included a 12(M) statement setting forth facts for the purposes of its motion for summary judgment. CBOT did not submit a 12(N) statement in response to CFTC's 12(M) statement. The following statement of facts is drawn from a careful consideration of the parties' 12(M) and 12(N) statements. Factual disagreements are noted.

## FACTUAL BACKGROUND

CBOT is a federally regulated exchange which provides a market for trading futures and options on futures. The CEA requires CBOT to police its market and discipline members who violate the CBOT's Rules and Regulations. 7 U.S.C. § 7a(8) (1988 and Supp. III 1991). "Any such [disciplinary] action shall be taken solely in accordance

---

1. Although several of the facts set forth in CBOT's motion are not supported by specific references to the record, these facts were either admitted by CFTC in its 12(N) statement or are not relevant or material to the issues in this case.

with the rules of that exchange." 7 U.S.C. § 12c(1)(A) (1988). However, the exchange rules themselves must meet the approval of CFTC. 7 U.S.C. § 7a(8) (1988 and Supp. III 1991). If the CFTC disapproves a rule, it cannot be enforced. *Id.*

CFTC is a federal agency that administers the CEA. 7 U.S.C. § 4a (1988). CFTC is authorized to review appeals from disciplinary actions taken by exchanges such as CBOT. 7 U.S.C. § 12c (1988). Subject to judicial review, CFTC may affirm, modify, set aside, or remand an exchange disciplinary action based upon whether that action was in accordance with the policies of the CEA. *Id.*

On February 9, 1988, a federal grand jury indicted Thompson B. Sanders ("Sanders"), a former CBOT member, on charges of wire fraud, interstate transportation of stolen property, and various violations of the CEA. The indictment specifically alleged that, during 1986, Sanders participated in a scheme whereby unauthorized persons were allowed access to the CBOT trading floor in order to conduct trades on Sanders' behalf. Profitable trades were placed in Sanders' account through non-competitive accommodation trades while unprofitable trades could not be traced to Sanders because of the unauthorized traders' disguises and false identities.

The scheme allowed Sanders to participate in futures contract transactions without risk of loss. On September 14, 1988, a jury convicted Sanders on all counts.

In early October 1986, during the course of the scheme, CBOT began an investigation into two of the fraudulent transactions. Later that month, federal officials also began to investigate transactions associated with the scheme.

On December 23, 1987, Sanders sold his CBOT membership. Following Sanders' indictment in February of 1988, CBOT initiated disciplinary proceedings against Sanders. On February 24, 1989, CBOT determined that Sanders committed fifteen violations of CBOT Rules and Regulations. CBOT permanently expelled Sanders and demanded that he pay a fine of $1,125,000 fine for the fifteen violations.[2]

Sanders appealed the CBOT disciplinary action to CFTC. In his appeal, Sanders contended that he was not subject to CBOT's disciplinary jurisdiction at the time CBOT's disciplinary proceedings were initiated against him. Consequently, he sought to have the disciplinary action and sanctions vacated. The CFTC examined CBOT Rules 250.01 and 251.01[3] and concluded that CBOT

---

**2.** It should be noted here that the parties differ on several factual points. In its 12(m) statement, CBOT maintains that on October 15, 1986, federal law enforcement officials informed CBOT that the FBI had asserted exclusive control over the investigation into the unauthorized trades. CBOT further contends that the federal officials solicited CBOT cooperation in the probe and that federal officials requested that CBOT suspend its own investigation. These CBOT assertions are not supported by the record. CFTC, on the other hand, denies in its 12(N) statement that federal law enforcement officials requested that CBOT suspend its investigation. In fact, CFTC asserts that the CBOT investigation was not closed until September 21, 1987.

The parties also differ on whether CBOT became aware of Sanders' involvement in the scheme before or after the sale of his CBOT membership. CBOT maintains that it was unaware of Sanders' involvement until Sanders was indicted in February of 1988. CFTC contests this assertion with a reference to a CBOT press release which, in fact, does not establish that CBOT knew anything other than the fact that some fraudulent transactions had taken place at the time Sanders sold his membership. In its reply to CFTC's 12(n) statement, CBOT correctly

points out that CFTC's position on this issue is contrary to the facts set forth in CFTC's agency opinion in the underlying matter. *See Sanders v. Board of Trade of City of Chicago*, 1992 Comm. Fut.L.Rep. (CCH) ¶ 25,230 (CFTC 1992).

While the parties' factual differences may seem significant, they are not issues of *material* fact and will not prevent summary judgment in this case. The parties' differences concern what CBOT knew at the time that Sanders sold his CBOT membership. As the discussion in this Opinion illustrates, CBOT's knowledge of Sander's involvement in the fraudulent trades is irrelevant to CFTC's interpretation of the CBOT Rules and Regulations.

**3.** We note here that in its administrative opinion, CFTC apparently examined CBOT Rules that came into effect after Sanders sold his CBOT membership on December 23, 1987. From the record, it appears that the version of Rule 250.01 discussed in the CFTC opinion came into effect on September 1, 1988, eight months after the sale of membership. The version of 250.01 that was apparently effective at the time of the sale is dated October 1, 1987. This version does not contain the "consent to jurisdiction" requirement discussed in the agency opinion. For the

did not have disciplinary jurisdiction beyond the date when CBOT allowed Sanders to sell his CBOT membership. Since no other CBOT rule extended CBOT's disciplinary jurisdiction, and all disciplinary action must be in accordance with exchange rules, CFTC concluded that CBOT lacked disciplinary jurisdiction to take action against Sanders. Thus, CFTC vacated CBOT's disciplinary ruling against Sanders.

CBOT now seeks judicial review of the CFTC ruling. It seeks an order that would (1) declare CFTC's decision vacating CBOT's disciplinary action to be in excess of CFTC's statutory authority and not in accordance with the law; and (2) reinstate the sanctions imposed by CBOT in its disciplinary action. Specifically, CBOT claimed that CFTC's order failed to afford any deference to CBOT's interpretation of its own rules. Both parties have filed cross-motions for summary judgment.

## DISCUSSION

This court will review the actions of the CFTC under the standard set forth in the Administrative Procedure Act, codified at 5 U.S.C. § 706 (1988): "The reviewing court shall ... (2) hold unlawful and set aside agency action, findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" A reviewing court will uphold agency action that is "rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute." *Cowherd v. United States Dept. of Housing & Urban Dev.*, 827 F.2d 40, 42 (7th Cir.1987) (quoting *Motor Vehicle Mfr. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). As long as CFTC's opinion was not arbitrary, capricious, or not otherwise in accordance with the law, we will uphold it.

In its administrative opinion, CFTC noted that CBOT's disciplinary jurisdiction generally extends only to its members. Sanders, however, was not a member at the time CBOT initiated disciplinary proceedings against him. The only CBOT rule that potentially deals with CBOT's jurisdiction over past members is Rule 251.01, which governs the sale of memberships by persons suspected of or under investigation for misconduct. At the time Sanders sold his membership Rule 251.01 provided in relevant part:

> No member may sell his membership privilege, unless the approval of the Board is first secured, [1] when he is under investigation by any standing committee or by a special committee ... or [2] when charges are preferred against him or [3] when he is under suspension for causes other than default, insolvency or non-payment of assessments. CBOT Rule 251.01 (October 1, 1987).

Since none of the conditions described in Rule 251.01 were applicable to Sanders at the time he sold his membership, CFTC concluded that CBOT did not have jurisdiction over Sanders at the time it initiated disciplinary proceedings.

In arguments before this court, CBOT contends that the principles of exchange self-regulation, articulated in *In the Matter of First Commodity Corp. of Boston*, [1986–1987 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 23,694 (CFTC 1987) ("*FCCB*"), would best be served if CBOT's disciplinary action against Sanders was given effect. This argument was addressed by CFTC in its administrative opinion.

In *FCCB*, a corporate member of the MidAmerica Commodity Exchange attempted to escape MidAmerica's disciplinary jurisdiction by resigning from the exchange. After MidAmerica filed formal disciplinary charges against corporate member FCCB, FCCB notified MidAmerica that it was withdrawing from the exchange. *Id.* at 33,798. FCCB was attempting to withdraw from MidAmeri-

purposes of this opinion, we will assume that the October 1, 1987 version of CBOT Rule 250.01 was in effect at the time of the sale of Sanders' membership and that there was no "consent to jurisdiction" requirement in force under this rule.

With regard to CBOT Rule 251.01, the version that was apparently in effect at the time of the sale of membership is substantially similar to the one discussed in the agency opinion, and any differences are of no consequence in this case.

ca in order to escape the sanction of expulsion, which would have the effect of permanently excluding FCCB from the futures trading industry. *Id.* n. 10. After MidAmerica took disciplinary action against FCCB, FCCB sought review before CFTC.

Although MidAmerica did not have a specific rule stating that a member cannot withdraw, CFTC concluded that MidAmerica's Rule 304.B bound each member to exchange rules for events occurring during membership until the proceeds of membership sale were released. *FCCB* at 33,799. Furthermore, CFTC noted that MidAmerica's Rule 309.A authorized the exchange to retain the proceeds of a membership sale until all outstanding disciplinary charges are resolved. *Id.* Reading Rules 304.B and 309.A together, CFTC reasoned that MidAmerica's rules envisioned an opportunity for the exchange to discipline a former member for violations that occurred during their membership. Thus, MidAmerica retained disciplinary jurisdiction over FCCB through invocation of Rule 309.A. *Id.* CFTC further reasoned that this interpretation of MidAmerica's Rules served the principle of exchange self-regulation, a basic tenet of CEA, which would be circumvented if an exchange member could escape sanction through resignation. *Id.*

CBOT contends that *FCCB* is analogous to the present case, and that the principle of self-regulation would best be served if CBOT's disciplinary action were upheld. However, we agree with CFTC's reasoning that the present case is distinguishable from *FCCB*.

Unlike MidAmerica, CBOT does not have a rule authorizing the retention of membership sale proceeds. At the time Sanders sold his membership, CBOT Rule 251.01 only prevented the sale of a seat under certain conditions. Since these conditions were not applicable to Sanders, Rule 251.01 was not triggered. Further, MidAmerica chose to retain the sale proceeds while it investigated FCCB. CBOT, on the other hand, did not take any action to prevent the distribution of Sanders' sale proceeds. Therefore, Sanders was not prevented from selling his membership, and CBOT lost disciplinary jurisdiction

over him when it released the proceeds of the sale of his membership in January 1988.

CBOT also argues that allowing Sanders to avoid sanction by escaping the literal terms of the rule subverts the principle in *FCCB* that a member accused of wrongdoing should not be allowed to evade disciplinary action by resigning. However, the integrity of congressionally mandated self-regulation cannot be preserved by allowing an exchange to ignore its own rules. In *FCCB*, MidAmerica did not ignore its rules in order to discipline its former member.

Thirdly, CBOT argues that the CFTC ruling setting aside CBOT's disciplinary action should be overturned because CFTC failed to give proper deference to CBOT's interpretation of its rules. CBOT interprets Rule 251.01 to require a knowing waiver of jurisdiction, even after a member sells his seat. CBOT asserts that without knowledge of Sanders' fraudulent conduct, it could not have waived its disciplinary jurisdiction over him.

There is support for the proposition that an exchange's interpretation of its own rules is entitled to deference. *See Case and Co., Inc. v. Board of Trade,* 523 F.2d 355, 363 (7th Cir.1975) (deferring to exchange interpretation of its rules giving exchange broad and flexible powers to insure an orderly market); *Fogel v. Chestnutt,* 533 F.2d 731, 753 (2nd Cir.1975) (exchanges have a "substantial degree of power" to interpret their own rules in the context of methods used to recapture brokerage commissions), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); *Moses v. Burgin,* 445 F.2d 369, 382 (1st Cir.1971) (exchange interpretation of "antirebate" rules, which served to restrict recapture of brokerage commissions, was entitled to deference). However, these cases are factually different from the present case. Unlike the cases cited, this case involves a disciplinary proceeding, which must be undertaken "solely in accordance with the rules of that exchange." 7 U.S.C. § 12c(1)(A) (1988). Thus, these cases are not persuasive.

■ If Congress intended absolute deference to an exchange's interpretation of its rules, the scope of CFTC review of exchange

decisions would be quite limited. Even if CFTC should give deference to an exchange's interpretation, it appears that CBOT never interpreted or addressed Rule 251.01 in its disciplinary decision to expel and sanction Sanders. Consequently, we find that CBOT's after-the-fact interpretation of Rule 251.01 was not entitled to deference by CFTC and should not be given weight by this court on review.[4]

Finally, CBOT argues that where an exchange's rules are ambiguous or silent, the exchange should be allowed to interpret its rules in accordance with the CEA. There is merit in allowing exchanges "broad and flexible powers" to "insure an orderly market" in cases of emergency. *Case and Co., Inc.*, 523 F.2d at 362. However, in the disciplinary context, some measures of fairness must prevail, and the CEA commands that disciplinary acts should only be taken in accordance with the stated rules of the exchange. To allow CBOT to ignore its rules in the present case would have the effect of extending CBOT's disciplinary jurisdiction to virtually all former CBOT members who may be later accused of some wrongdoing during their membership. This court is not prepared to take that step.

## CONCLUSION

For the foregoing reasons, we conclude that the CFTC ruling vacating CBOT's disciplinary action was not arbitrary, capricious, or an abuse of discretion. Further, we find the action was in accordance with the law. Therefore, we grant defendant CFTC's motion for summary judgment. Plaintiff CBOT's motion for summary judgment is denied.

---

4. Therefore, the parties' dispute over when CBOT became aware of Sanders' involvement in the fraudulent trades is not material.